Michael D. Franco, counsel for Shelly Melissa Halper, David D. Sardar, counsel for Apolline, Wayne Farms Linity Group LLC, and Solomon M. Cohen. All right. Mr. Franco, do you wish to reserve any time for rebuttal? Five minutes, please. Okay, thank you. You may commence. May it please the Court. The Court is familiar with this record. I don't want to rehash everything, but I would point out that in this particular instance, we were talking about a difficult litigation matter that resulted in a de facto terminating sanction for the debtor due to discovery sanctions. The Court is familiar with the record. It was difficult. There was numerous delays, and the Court held the debtor to account. The problem was, in our opinion, the Court noted that they were not ready to do terminating sanctions, and yet they gave the terms of a discovery sanction that ended up terminating the case. It was $40,000, $10,000 every two weeks. The debtor made one payment, failed to make the second payment, the case was terminated. And that was also at a point in time when another deposition had been set, and the debtor didn't get an opportunity to appear. There were plenty of times the debtor did not appear at other depositions. Not every single one of them was the debtor's fault, but it was a circumstance that the terms of the discovery sanction ended up terminating the case. $10,000 every two weeks for a Chapter 7 debtor where the Chapter 7 trustee had already issued a no-asset report. How long had she been in Chapter 7? It was originally a Chapter 11, and then it had been converted to a Chapter 7. So how long in bankruptcy? That's a better question. I think the case was originally filed in 2010. I'd have to actually look at it. So she'd been in bankruptcy for some time, and there was a tremendous amount of litigation going back and forth. But years? Yes, years. So how relevant is the no-asset report? I believe the debtor testified, and it was in the record, that she did not have the means to pay $10,000 every two weeks. She did make one payment of $10,000. She could not continue to make the payments. She said she could make it, what, every month? Because she did indicate some ability to pay the sanction. Yes. So the concern the debtor had was her ability to make the payments, and she struggled to make them. But at that particular schedule, it became a de facto terminating sanction. Yep. Did she ever offer any financial information, any corroboration for her statement that she couldn't make that payment? I do not know if she actually submitted financial statements, but she did make that as part of the record and explain, and I think she tried to seek some sort of payment schedule, and the court was not interested. I do understand that the court was relatively fed up with her at that point in time, but by creating a payment schedule of $10,000 every two weeks, it almost became an impossibility. Well, it became an impossibility, despite the fact she did make one payment of $10,000. Is there anything wrong in principle with laying out a lesser sanction, lesser than a terminating sanction, and then imposing a terminating sanction if that lesser sanction doesn't work for some reason? I personally have seen courts do that. There are times when if the debtor is just not going to get it, then the courts ultimately lead to a terminating sanction. I personally have seen judges in my particular district in Santa Ana issue a sort of a rap on the knuckles. You're going to pay this amount of money, and it's going to be $100 a day until you comply. So that usually gets people's attention, and if that doesn't work, then they will call in the marshals, and they'll bring them in and say, for some reason, you don't seem to be taking this seriously. Isn't what the judge did here sort of a variant of that? Well, in a way, but it was $40,000 and then $10,000 every two weeks. Now, it's a sanction that would almost be placed upon a large corporation, not an individual. But for an individual in this particular circumstance, without a demonstration that they had some sort of assets or that there was an argument they were hiding assets or they just weren't complying or they weren't surrendering overseas funds, I've seen cases of that. But again, there's no evidence to support that she proved that. I'm sorry, Your Honor? There's no evidence in the record that supports that she came to the court with that information and said, here's my financials. No, Your Honor, that is correct. However, in this particular instance, when she's looking at claims against her in multimillion dollars, I believe that she understood how serious it was, and then she did come up with $10,000. When she couldn't come up with the second $10,000, her case was over. To say that, you know, well, she could have paid it, she just chose not to, and she preferred to get a multimillion dollar default in two different cases, I don't know that that doesn't seem to square with reality. I do understand that there are cases. No, I guess the reality is the point to do that or take some action would have been at the creation of that order, not afterwards when she comes in and says, I can't do it, because the record indicates there was a discussion between the judge to negotiate, and to some extent, the terms of that repayment schedule or the payment schedule. In that particular circumstance, when you're arguing, in my experience with the judge, when you're arguing with the judge as far as what the payment schedule is, the payment schedule will be what the judge wants it to be. Well, it has to be constrained by the ability to do it. And the judge indicated, I don't want to set her up to fail. So, again, the problem that I have is that there's no evidence. I hear what the court is saying, but the debtor did testify in court that she was not able to make the payment, she struggled to make it. The evidence is she wasn't able to make the payment in light of, you know, she's going to be looking at a multimillion dollar judgment entered against her. That was after the fact, not at the imposition of the schedule. And, again, given the history, which Judge Taylor is kind of indicating took years, wasn't the court within her rights to say what she said? It's too little, too late. The court has the power to do that, but under the circumstances with the sanction at that rate, again, for an individual at $10,000 every two weeks, you know, that she could make the first payment, she could make the second payment, third payment, you're gone. Three and a half payments, you're gone. Again, $10,000 every two weeks. And I do understand, I hear what you're saying as far as, you know, what is the evidence she couldn't make the payment. But we don't have, there's no evidence that she had all sorts of resources and she was just thumbing her nose at the court either. $10,000 every two weeks for an individual? I'll just leave it there. I think the, well, let me frame this as a question. Her history had been, she had a long history of delay, correct? There were delays and some, you know, not all of them were her fault as far as resetting the depositions, but the record is what it is. It's years? Yes. Okay. And given that it was years, and my recollection, and you'll correct me if I'm wrong, was that the $40,000 wasn't what the other side was asking for either. They were asking for substantially more money, were they not? That is correct, Your Honor. And they documented. In excess of $80,000. Right. So while the $40,000 number out of context is one thing, but in context the judge actually determined to assess substantially less than the documented fees connected with the matter, correct? That is correct, Your Honor. And so how does that factor into a review of, our review of the court's discretion in setting the state, the sanction? Well, the debtor can dispute the $40,000, but as the old businessman's adage says, you can name the price, but I'll name the terms. And the concern we have in this particular circumstance is the terms of $10,000 every two weeks were such that it was just a matter of when the debtor was going to fail with her particular circumstances. And I mentioned the sort of Damocles hanging overhead of these multimillion-dollar judgments to say that she would take it seriously. So if she had the wherewithal, she would have done it. And if she didn't, again, we're not talking about $40,000 within six months or $10,000 and then $5,000 a month, you know, as a show of good faith. We're talking about terms of $10,000 every two weeks, didn't make the second payment, her case was terminated. All right. You're at six minutes. Do you want to reserve your time? The five minutes should be fine. Well, you've got more than five minutes, and we'll give it to you. All right. Very good. Thank you. Thank you, Your Honor. All right. Mr. Cullen? Or Mr. Sarver. Excuse me. Good morning. Good morning. I've heard the comments and the questions. I do not wish to go back through and reiterate the contents of the briefs. I know the Court's very familiar with it. Two quick comments. I note that when the hearing took place on December 6th, papers could have been filed demonstrating a financial inability to pay. The tentative ruling was quite clear that sanctions were going to be imposed. Debtor chose not to do that. There was clearly an ability to come before the Court and fall on the Court's mercy, saying, yes, I want to participate in the discovery process, even though I haven't done it six times, albeit one was the fault of the appellee. But there was the opportunity that presented itself to demonstrate an inability to pay or at least an ability to pay over a longer period of time. I don't want to repeat what the Court has already stated. But the argument was made for a specific period of time. There was no evidence to support it. But she, in effect, said, I'll do it, but I need to do it, I think, monthly? That's correct, Your Honor. In fact, what Judge Mund did was order the parties to go outside and have a conversation about two things. One, when and how was the money going to be paid, because Mr. Margulies, who was representing the appellees at the time in the case, was demanding about $87,000 and wanted it paid all up front one time before the deposition because he had prepared on numerous occasions for the deposition only to be told an hour before or a day before the deposition is not going to go forward. Those are different issues. But when they went outside, Ms. Halper had counsel. They discussed the aspects of the ruling that Judge Mund was contemplating, the dollar amount that was being contemplated, the payment schedule that was being proposed, and the date for the deposition and the times by which the payments would need to be made, and came back in and placed those points on the record. So let's take it one step further. There was still the option to come back in after the court made its order to move for reconsideration. And if you're going to move for reconsideration, bring in the evidence that you didn't bring in before. Would it have been considered? I don't know. I wasn't there. But Judge Mund, who has been on the bench for some 33 years, I know right around the time I started practicing, is a very practical individual, as most justices are. They want to see equity done, but they also don't want to see people being taken advantage of. And that's what we have in this case, people being taken advantage of. Six times to prepare for depositions, the costs are astronomical in order to do that. We're all practicing lawyers or have been practicing lawyers at one time, and we know what it takes in order to get ready. So I'd like to know if there's any other questions that the court has I'm happy to address. My view of it, and I want to see if you agree and I'll ask counsel, is this was a compensatory sanction that was less than fully compensatory. Fair statement. Because it didn't come close. And we know that it was, you know, what Mr. Margulies was asking for was $87,000, and the court was originally at one number, came to $40,000, and they wanted it paid all up front one time. That wasn't going to happen. The judge wasn't comfortable with just issuing a terminating sanction right then and there, which is why she asked the parties to go outside, have a conversation, and discuss a payment schedule that would work so that by the time that they got to the deposition, there would have been an incentive, if you will, for Ms. Halper to show up, because she had now spent the money and, well, if she's going to spend the money, come in and testify now. But I don't really think that the record reflects that that was the intent. It was easy enough to come into court later after the fact on a motion for reconsideration and say, okay, I can't do it, these are my finances, and this is why, with an appropriate declaration and substantiating documentation. We're asking for an additional time to come in and put that evidence before the court. Something. But that wasn't the modus operandi of this particular party. It was just from the time in 2000 and, I believe, 15, when the stay on the Fifth Amendment was terminated, 16 months went by and never did she appear for deposition. When you look at this case from a certain angle, it almost looks like she took a default or her default was taken because she failed to pay money. In other words, the terminating sanction was a sanction for the failure to pay the money. And that just rings wrong to me. Do you have a response to that? I do. Because I don't think that that's why Judge Mund did what she did. I think that by the time they got to the hearing on the order to show cause-based sanctions and for the terminating sanctions, the court made it pretty clear enough is enough. There has been delay after delay after delay, and I'm not going to continue to subject the plaintiffs in this case to more fees, more costs, more expenses, more time, more delay, just to be coming back here again six months from now when the costs will probably have doubled because there will have been additional preparation, additional motions that will have to have been filed, additional judicial resources which will have been taken up. Now, I don't think, with all due respect, Your Honor, that it was an issue of just a failure to pay and that equals sanctions. I think we have a history of a case that began in 2011. We had a stay of the proceedings that went on for years. And, by the way, while the brief seems to imply that it was a motion that was granted by the court, that stay of proceedings was by way of stipulation. There was continuous cooperation by the plaintiffs in this case to get past the statute of limitations argument or, excuse me, I'm sorry, the Fifth Amendment argument, and then start discovery when it was determined that that didn't exist any longer. And then from that point forward, over 16 months, it was impossible to get Ms. Halper to appear. There was no Keating motion in the case ever. I'm sorry, could you repeat that? There was no Keating motion. It was just all by the Fifth Amendment issue was resolved exclusively by stipulation. The original motion that was filed to stay the proceedings in the early part of the case was stipulated to by counsel. Okay, so there wasn't a motion. Yes. Would she have been within her rights to do a terminating sanction at the point in time where she provided the opportunity to avoid it through the payment of a monetary sanction? Your Honor, I think broad discretion is given to a judge to make a determination as to whether or not sanctions in the form of a terminating, termination of the case are or are not proper. I don't know. In looking at the way she wrote her tentative ruling, it wasn't, she wasn't inclined to do that. She might have been within her right because she has the discretion to do that, and there's sufficient case authority that says that if there is such discovery abuse, that the court, yes, is within its right in order to issue such an order. That's cited in my papers, and she chose not to do that because there was an issue of practicality and there's also an issue of the desire to have the matter resolved. I think in all fairness, I think Judge Bunn wanted to see this case get heard on the merits. Well, there's also a requirement to consider less drastic sanctions. That is true, too. In that case, should the order have reversed the sequence of events and put the deposition first? Because that's the violation, is the non-attending of the deposition. And that was backloaded. And there was discussion about that. But was that error? Because there's some case law out there that says that if you comply with the discovery violation, the non-payment of sanctions later is not terminating. My crystal ball broke a long time ago, and so it's hard for me to sit here and say, yes, I believe that if we would have put the deposition first and just said we're going to have it next week, show up, and with all of your documents and so forth, and then that's fine, and then you pay the sanction later, that that would solve the problem. I don't think it would have. Well, that would have been the less drastic sanction, wouldn't it? It would not have addressed the issue that was raised by the order to show cause for a contempt, and it would not have done anything to allow the court to have control over its processes and its procedures and the ability to manage its docket. Because had the debtor not shown up, had the debtor come and refused to testify, then the parties would have been right back. No, I don't think that's necessary because as it's drafted, she showed that she was willing to give it a drop dead. She just reversed the order. So anything was drop dead. So if you had put the deposition first and there was no attendance, upon filing a notice of non-attendance, it certainly seems that that would have gone, you would have been right back here, but you would have been terminated for the discovery violation rather than the payment sanction. Well, but, Your Honor, I believe that the issue, they go hand in hand, and there was an issue of compensation of some form for the plaintiff in the case. And I understand what you're asking. That's not my point because you could still have the judgment for the sanctions and you could have it for as much to compensate. And the judgment, as Judge Taylor indicated, selected less than the full, but it's just the ordering of the money and the discovery abuse that has a bit of an issue here. The parties had stipulated a number of times before the ultimate deposition had been scheduled in February after the sanctions were to have been paid that Ms. Halper was going to appear and she was going to be deposed. And each time it was very clear that she had no intention of doing that. I think that what the judge did was mandate the payment of sanctions in order to assure that she would appear for deposition because she had the ability to do that. And she had the, she was trying to force, I believe, her to appear and be deposed in a good faith response to the questions that would be interposed to her and not just show up and then come back to the court and say, I appeared at the deposition and I answered questions, but I didn't believe that I should have answered certain questions. She had hired a lawyer at the last minute to take the position that certain aspects of the deposition should be limited because the Fifth Amendment privilege against self-incrimination was probably going to come up again. And so it seemed pretty clear that even if that alternative was chosen, and I don't believe that it was the proper way to go, I think the way it happened is right, I think that it went forward the way it did to give the, to incentivize Ms. Halper to appear and in good faith comply with the discovery requirement because suddenly she had a horse in the race and not just, well, I'm going to get a judgment against me. If she's going to get a judgment against her for non-appearance, she gets it for non-appearance. But it's a matter of having counsel prepare again. It already spent $90,000 in costs, and I'm sure it's far more than that. And there was just, it seemed like there was no incentive to get her to appear and perform in good faith and answer questions throughout in discovery because it was clear over the period of the 16 months that preceded that that never happened. There was just always another reason why. And I think the reason why the less drastic sanction of setting the deposition and then paying the sanctions sometime later on in the future, which could have resulted in them never being paid or being paid following an analysis of her assets and ability to pay, may have taken months and months and months when that very issue could have been addressed before the hearing took place ordering to appear in the sanctions order. She could have simply, as I said early in this discussion, come in and said, I can't afford it. Here's my declaration. Here's my bank statements. Here's my assets. Here's my liabilities. This is what I can afford to do. This is what I'm willing to do, not just walk in, and I don't believe she ever took the stand, and say, I can't afford it. It's just not enough. There would be no incentive, and I think it detracts from the ability of the court to manage its calendar, to manage its processes, and to provide for the interests of the plaintiff, who are the parties in this case who had been delayed and forced to incur the substantial fees and costs that they did. Thank you. Thank you. Thank you. Mr. Franco, you have five minutes and 57 seconds. Thank you, Your Honors. Again, the big concern with this is the timing of how things were set up with the sanctions. There was a continued deposition, I believe, set for January 31st. The contempt order was entered December 19th. She was to pay $10,000 every two weeks. She was placed on a very rigorous payment schedule. She made one payment. She didn't make the second payment. The case was gone before she even had an opportunity to perhaps not show up for the deposition, but the deposition was set. But isn't the issue, or one of the issues, the whole idea that if you set the deposition and you didn't have a substantial payment before the deposition, you were right back where you'd been before. The attorney once again has prepared, and he's even more out of pocket. So was the timing not designed in part to make sure that the sins of the past weren't repeated in the present? There is an element of that, and if she hadn't made any payments, I think I'd be in an even more tenuous position than I might be already. But she did make a $10,000 payment, and she was attempting to, from what I understand, she was trying to cobble together the money, but she didn't make the second payment. And now, unfortunately, we're left with a record in the circumstance where it looks like if the person will pay $10,000 every two weeks, then they can proceed with their case. And I do understand the sanctions. I've had sanctions that were granted in my favor, and I've had difficulty getting them. So I'm completely sympathetic to the circumstance with the court trying to make sure that people comply with its orders and getting irritated with people when they do not. However, in this particular circumstance, if you look at the timing and then the terms, it doesn't seem to flow very well. I do understand that courts can issue terminating sanctions, and it's been my experience when they do. They are very careful to make a very careful and clean record and have people respond and set additional hearings and do whatever they need to do to make sure that everything, all the I's are dotted and the T's are crossed. And in this particular circumstance, just looking at the timing of the sanctions and the payments and then the deposition being set and it never even having an opportunity to happen or they didn't call her in and say, you know, you missed a payment. What's going on? You know, we're really frustrated with you. We keep telling you you've got to comply. We gave you an opportunity to comply. What's happening? Again, it wasn't $4,000 over two months. It was $10,000 every two weeks for an individual. And I do understand her saying, well, we have no evidence she couldn't make the payment. Actually, didn't she give her a month between the third and the fourth payment? I thought the third payment was due January 27th and the fourth was after the discussion was pushed back to February 24th, which would have been in between the deposition. On that particular issue, I'm looking at the record that I have and I'm looking at as far as when they filed their declaration, which was prior to the deposition set on January 31st. I think January 14th they filed the declaration she didn't make the payment and on January 30th the court entered the order terminating sanctions. So then the case was effectively over at that point. My feeling, to be honest, is that, again, she was trying to make sure that she didn't duplicate so that if the attorney prepared, it was less than compensatory of past harm caused, in her opinion, but it was also anticipatory of sunk costs that would have been there. She had established a track record of delay. Is it a fair assessment, which is a bad question to ask you, but is it fair to say that the judge was trying to make sure that the lawyer wasn't deeper in the hole? It's been my experience of all the bankruptcy judges I've ever appeared before that they're always trying to be fair and they're trying to do the right thing. I'm fortunate that I've never had a circumstance where I felt the fix was in. So I'm very sympathetic to the position the court found itself in in trying to ensure compliance with someone who didn't have a very good history. That being said, with the circumstances, I believe her attorney had done a motion to withdraw just before. In this particular circumstance, looking at the facts, I do understand you're talking about somebody who had really not made any friends with the other side, not that litigants ever were friends, and that they had taxed the court's patience. But I believe the court, even in their own records, said that they're concerned about whether this person's going to comply, but they weren't prepared yet to do terminating sanctions. And again, they had set the deposition, and then we had this payment schedule that was very onerous. So unfortunately, it appears to be almost a de facto terminating sanction. And you don't think the judge had discretion at that point to do one? Well, the judge always has discretion in the sense that they could come in and say, listen, this person didn't comply, and I want more information before we enter a multimillion dollar judgment against them. Because I personally have litigated issues where I've lost in a case in Los Angeles with a certain judge who writes a bankruptcy evidence manual. So it's never a good idea to do that appeal. But we had gotten a default judgment in state court, and the judge said, listen, it was too late. We litigated your matter fully, and you lost. And we don't like default judgments. We prefer to litigate matters fully. So in that particular circumstance, despite a state court default, we still lost. But it was fully litigated. All right. Well, thank you for your good argument. Thank you very much. Thank you. This will be under submission.
judges: Taylor, Faris and Spraker